*Law Offices*
**MORGAN, LEWIS & BOCKIUS LLP**
**(A Pennsylvania Limited Liability Partnership)**
**502 Carnegie Center**
**Princeton, New Jersey 08540**
**609-919-6696 / 6647**
**Richard G. Rosenblatt**
**James P. Walsh, Jr.**
**August W. Heckman III**
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION, <br><br> Plaintiff, <br> v. <br><br> VARUN G. PAHADE, <br><br> Defendant. | Civil Action No. _____ <br><br> **COMPLAINT** <br><br> **Document Electronically Filed** |

Plaintiff COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION ("Cognizant"), by and through its attorneys, Morgan, Lewis & Bockius LLP, and against Defendant, VARUN PAHADE ("Pahade"), alleges as follows:

### Introduction

1.      Cognizant seeks injunctive relief, specific performance, damages and other appropriate remedies in connection with Pahade's blatant breach of his contractual non-competition and confidentiality obligations upon his voluntary resignation from employment with Cognizant.

2.      In particular, Pahade, a former employee of Cognizant, violated and is continuing to violate the limited and reasonable terms of the Non-Disclosure, Non-Competition and Invention Assignment Agreement he signed on January 18, 2014 (the "Agreement") by

providing services, through a competitor of Cognizant, for the same Cognizant client — American Express Company ("American Express") – for which he performed services while employed by Cognizant, commencing the next business day following his departure from Cognizant on April 11, 2014. A true and correct copy of the Agreement is attached hereto as Exhibit A.[1]   Indeed, despite telling his Cognizant manager that he was resigning to "try something new," Pahade reported to work on Monday, April 14, 2014 for the same Cognizant client, on the same client team, reporting to the same client manager, and performing the strikingly similar services. The only thing "new" about Pahade's assignment was the identity of the employer being paid for his services. Pahade maintained his ruse even when his Cognizant coworkers gave him a farewell lunch and card – only, to their shock and surprise, to see him the next business day after his resignation, back on the team, but with a new employer.

3.      Pahade's breach of the Agreement and associated misconduct directly undermines Cognizant's business model and blatantly encourages others to ignore their contractual obligations. Indeed, as a result of Pahade's breach, he is competing directly with Cognizant by providing the same basic services to the exact same Cognizant client to which he was introduced in his capacity as a Cognizant employee — thereby misappropriating Cognizant's goodwill, depriving Cognizant of the opportunity to further its business relationship with said client, and allowing a competitor of Cognizant to ingratiate itself with its client by exploiting Cognizant's goodwill and the training and confidential information Cognizant provides to its employees. In addition, Pahade inevitably will misappropriate, misuse, and/or wrongfully disclose confidential corporate and proprietary information, and other business information learned while employed at Cognizant, for the benefit of his new employer.

---

[1]      On December 21, 2010, Pahade signed a nearly identical Non-Disclosure, Non-Competition and Invention Assignment Agreement. A true and correct copy of the 2010 Agreement is attached hereto as Exhibit B.

4.      The relief Cognizant seeks is extremely limited — it merely seeks specific performance under the Agreement to require that Pahade not be able to provide services, for a period of 12 months from the entry of an injunction, to a Cognizant client for which he provided services during the last 12 months of his employment with Cognizant, in this case American Express. He can continue to work for his current employer.  He can otherwise compete with Cognizant.  He can even provide services to any Cognizant client so long as he had not provided services on behalf of Cognizant for that client in the 12 months preceding his voluntary resignation.  Cognizant is not seeking to take away Pahade's ability to make a living — rather it seeks only to narrowly enforce its reasonably protectable interests.

5.      Indeed, Pahade's new employer, IntraEdge, Inc. ("IntraEdge"), is a large enterprise and should have other opportunities to place a talented consultant such as Pahade without his having to breach his contractual obligations owed to Cognizant.  In fact, as of Friday, May 2, 2014, IntraEdge had posted on its website seventy-seven job openings in Arizona alone, the vast majority of which are in Phoenix, Scottsdale, Glendale and Tempe.  In addition, there is no shortage of IT jobs in the Phoenix area.  Even a quick review of the Internet for IT jobs on LinkedIn and other job-related networking sites reveals an abundance of opportunities.  For example, LinkedIn lists 236 Information Technology jobs in the Phoenix area.  *See* http://www.linkedin.com/job/q-information-technology-l-phoenix-jobs.  A quick search of the Monster.com website reveals at least 459 Information Technology jobs in Phoenix. *See* http://jobs.monster.com/v-technology-q-information-technology-jobs-l-arizona.aspx.   Similarly, CareerBuilder.com shows at least 1,202 Information Technology jobs in Arizona, with 990 positions        located        in        the        Phoenix        area.        *See* http://www.careerbuilder.com/jobs/az/category/information-technology/.

6.     Pahade is an experienced information technology employee.  As a review of his résumé reveals, he has wide-ranging experience and education.  For example, Pahade holds a master of Engineering Management degree from Northwestern University and has significant experience leading and managing large and sophisticated projects for several different organizations.

7.     As reflected in the fact that Pahade left Cognizant and missed not a day of work before starting with a new technology company, he is an attractive job candidate who should have no problem finding alternative work if his new employer no longer will employ him as a result of his contractual obligations to Cognizant.

8.     Further, Cognizant seeks recovery of its monetary damages resulting from Pahade's egregious actions, exemplary damages to reform or deter Pahade and others from engaging in similar conduct, and its attorneys' fees and costs associated with enforcing its rights under the Agreement.

## Parties

9.     Plaintiff Cognizant is a Delaware corporation with its corporate headquarters located in College Station, Texas.  Cognizant also has significant corporate operations located in Teaneck, New Jersey — within this judicial district – where Cognizant's corporate headquarters was located prior to December 2013.

10.     Upon information and belief, Defendant Pahade is an individual residing at 18416 N. Cave Creek Road, #2020, Phoenix, Arizona 85032.

## Jurisdiction and Venue

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) based on Cognizant's citizenship in the States of Texas and Delaware and Pahade's

citizenship in the State of Arizona. Further, the matter in controversy is in excess of $75,000, exclusive of interest and costs.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1404 because, in Section 7.3 of the Agreement, Pahade and Cognizant agreed to exclusive jurisdiction of this Court with respect to all suits, proceedings, and other actions relating to, arising out of, or in connection with the Agreement, and Pahade waived any claims against or objections to this Court's personal jurisdiction. (Ex. A, ¶ 7.3). Accordingly, all parties have consented to venue in this district and the harm caused by Pahade's actions will be felt in this judicial district, where Cognizant maintains significant operations and where Cognizant's Banking and Financial Services Vertical (in which Pahade worked) is based.

## **Cognizant's Business**

13.     Cognizant is a leading provider of custom Information Technology (IT) consulting and technology services and outsourcing services. Its clients are primarily Global 2000 companies located in North America, Europe and Asia. Its core competencies include Technology Consulting, Complex Systems Development and Integration, Enterprise Software Package Implementation and Maintenance, Data Warehousing, Business Intelligence and Analytics, Application Testing, Application Maintenance, Infrastructure Management, and Business and Knowledge Process Outsourcing (BPO and KPO). Cognizant tailors its services to specific industries, and utilizes an integrated global sourcing model. This global sourcing model combines technical and account management teams located on-site at the client location and at dedicated near-shore and offshore development and delivery centers located primarily in India, China, the United States, Argentina, Hungary and the Philippines.

14.     Cognizant's business is organized and managed primarily around four vertically-oriented business segments:   Financial Services; Healthcare; Manufacturing, Retail and Logistics; and Other, which includes Communications, Information, Media and Entertainment and High Technology.  This vertical focus has been central to Cognizant's revenue growth and high client satisfaction.

15.     Cognizant hires experts out of industry, establishes a broad base of business analysts and consultants, invests in industry training for its staff, and builds industry-specific services and solutions.  This approach is central to Cognizant's high-levels of on-time delivery and client satisfaction.

16.     Using a globally distributed workforce to provide value-added services presents a number of challenges to IT services and BPO/KPO providers, like Cognizant.  The offshore implementation of value-added IT services requires that Cognizant continually and effectively attract, train and retain highly skilled software development professionals with advanced technical and industry skills necessary to keep pace with continuing changes in information technology, evolving industry standards and changing client preferences.  These skills are necessary to design, develop and deploy high-quality technology solutions in a cost-effective and timely manner.

17.     Competition in the IT and consulting industries is fierce.  In order to obtain a competitive advantage within this landscape, Cognizant invests considerable time and resources into developing its own technology and recruiting and retaining its employees.  Indeed, critical to Cognizant's business model is identifying, training, and assigning employees to fulfill specific roles for Cognizant's clients.   For this service, Cognizant is compensated by the client. However, if Cognizant's employees were able to simply accept work directly from these clients

or with other companies and be placed at these clients, then Cognizant would lose revenue before achieving and/or maximizing the return on its investment.   Additionally, Cognizant's competitors would be afforded the opportunity to unfairly compete for the business of Cognizant's customers without having to make the investment that Cognizant has made in preparing its employees to satisfactorily meet the needs and demands of its customers.

18.     Moreover, Cognizant closely guards its proprietary information, which enables Cognizant to serve its clients' needs efficiently and effectively.   If this proprietary information were generally available to Cognizant's clients and competitors, Cognizant would lose its competitive edge and would eventually be out of business.   Thus, it is crucial to the success of Cognizant's business to protect against the misappropriation of its confidential and/or proprietary information.

## The Agreement

19.     In order to prevent the erosion of its business – indeed, in order to preserve its business model – Cognizant requires all of its employees to execute a Non-Disclosure, Non-Competition And Invention Assignment Agreement, *see*, *e.g.*, Ex. A, which contains provisions for the protection of its business model and confidential information.

20.     Section 1.4 of Pahade's Agreement states:

> Employee will not, directly or indirectly, use or disclose to anyone, or authorize disclosure or use of, any of the Confidential Information revealed to, learned by or created by Employee during the course of his/her employment with the Company ... Employee further agrees that he/she will take all reasonable efforts to protect the confidentiality of Confidential Information.

*See* Ex. A, ¶ 1.4.

21.     Section 2.2 of the Agreement states:

> Employee agrees that during the term of Employee's employment with the Company and for a period of twelve (12) months after the

cessation of Employee's employment, Employee will not ...
consult for, contract with, be employed by, any client, customer or
prospective client or customer of the Company for which
Employee performed work for, consulted with, provided services
to, or performed any job function ... within the twelve (12) months
prior to his/her separation from employment with the Company.

*Id.*, Ex. A., ¶ 2.2.

22.     Employees also agree to "devote [their] best efforts and entire business time and
attention to the Company's business" during their employment. *Id.*, ¶ 2.1.

23.     Each Employee further agrees that "if he/she engaged in any activities prohibited
by th[e] Agreement or fails to take actions required by th[e] Agreement, irreparable harm to the
Company will likely result, for which a remedy in the form of damages may not be adequate or
otherwise ascertainable.  Consequently, the Company will be entitled to temporary, preliminary
and permanent injunctive relief against Employee." *Id.*, ¶ 7.2.

### Pahade's Wrongful Conduct

24.     On or about January 3, 2011, Cognizant hired Pahade as a Senior Associate and
placed him on a project team at Cognizant's client, American Express (Pahade had previously
worked for Cognizant as an Associate in 2006 through 2009 in Pune, India).  Pahade was later
promoted to a Manager position.  Specifically, Pahade was employed by Cognizant on the
American Express Marketing, Enterprise Growth and Analytics team as a Business Analyst and
Project Manager, responsible for, among other things, overseeing project execution,
requirements gathering, allocating resources, budgeting, status reporting, and monitoring
stakeholder expectations.  American Express was the only client account for which Pahade
provided services for the twelve months preceding his departure from Cognizant.

25.     On or about March 28, 2014, Pahade purported to give two weeks' notice to his
manager of his voluntary resignation.  Pahade stated that he was resigning his employment to try

something "new."  Pahade's last day of work would be Friday, April 11, 2014.  However, Pahade declined to inform his manager or any coworkers where he would be going to work after resigning from Cognizant — and certainly did not disclose that he would continue providing the exact same services for American Express through another employer.  Pursuant to the terms of the Agreement, Pahade could have accepted employment, within the first 12 months after his separation from Cognizant, with any employer in the world *except* American Express or with any consulting or IT service provider company in the world (such as IntraEdge) with the sole limitation that such company could not place him at American Express.

26.     On Monday, April 14, 2014, members of Pahade's project team at Cognizant were surprised, to say the least, to observe him enter their work area and assume the same role he had held while he was employed with Cognizant.  The only difference from the previous Friday was that Pahade was now an employee of IntraEdge.

27.     Amit Bhandari, Client Partner, Cognizant Banking and Financial Services, confronted Pahade on or about Monday, April 14, 2014, and asked Pahade why he had told Mr. Bhandari that he was leaving Cognizant to "try something new." In response, Pahade admitted that he misled Cognizant about his "new" venture because he was afraid that Cognizant would enforce the terms of the Agreement and prohibit him from working for IntraEdge at American Express.

28.     Indeed, Pahade flaunted his new employment in front of his prior Cognizant co-workers and, perhaps emboldened by advice from his new employer, intentionally ignored his contractual obligations to Cognizant in an obvious effort to encourage others to do so as well.

29.     Upon information and belief, in order to begin working for a competing company and to provide services to American Express on the following business day after his resignation

from Cognizant, Pahade interviewed for his new position while still employed by Cognizant. Upon further information and belief, Pahade was hired by Cognizant's competitor, and placed at the exact same American Express location, because of the training and experience Cognizant provided to Pahade. Also, upon information and belief, Pahade knew he would be performing competing services for American Express at the time he provided notice of his resignation to Cognizant, but failed to disclose his new employer or the nature of his new employment – instead, he intentionally misled Cognizant into believing that he was pursuing something "new."

30.     Cognizant has not replaced Pahade on the Marketing, Enterprise Growth and Analytics team. Further, due to Pahade's actions, Cognizant not only lost the opportunity to place another employee on the Marketing, Enterprise Growth and Analytics team, but a competitor was able to place Pahade on that team to enhance its goodwill with a valued client of Cognizant, to Cognizant's obvious detriment.

31.     On April 17, 2014, immediately after learning of Pahade's competing employment at American Express and breach of his non-competition obligations, Jacob A. Hill, Associate General Counsel at Cognizant, wrote to Pahade to remind him of his contractual obligations and to request adequate assurances that he would cease any and all such wrongful conduct. A true and correct copy of Mr. Hill's April 17 letter is attached hereto as Exhibit C.

32.     Pahade ignored Mr. Hill's letter and continued to flaunt his flagrant disregard of the Agreement in front of his prior Cognizant coworkers.

33.     Mr. Hill also wrote to Pahade's new employer to advise them of his contractual obligations. A true and correct copy of Mr. Hill's April 17 letter to IntraEdge, Inc. is attached hereto as Exhibit D.

34.     IntraEdge failed to respond to Mr. Hill's letter.

35.     On April 29, 2014, Richard G. Rosenblatt, Esq., outside counsel for Cognizant, wrote to Pahade advising him that Morgan, Lewis & Bockius LLP had been retained to represent Cognizant and to "afford [him] one final opportunity to cease violating [his] contractual obligations." A true and correct copy of Mr. Rosenblatt's April 29, 2014 letter is attached hereto as Exhibit E.

36.     Mr. Rosenblatt also wrote to Pahade's current employer in an attempt to resolve the issue of Pahade's breach without involving the courts. A true and correct copy of Mr. Rosenblatt's April 29 letter to IntraEdge, Inc. is attached hereto as Exhibit F.

37.     Both Pahade and IntraEdge failed to respond to Mr. Rosenblatt's letters and, through their silence, have willfully refused to cooperate with Cognizant and to honor Pahade's contractual commitments.

## COUNT I
### (Breach of Contract)

38.     Cognizant realleges and incorporates paragraphs 1 through 37, as though fully set forth herein.

39.     Pahade is bound by the Agreement, which prohibits him from disclosing Confidential Information and from performing services for any client for whom he performed services in the preceding twelve months while employed by Cognizant.

40.     Pahade breached the Agreement by performing services for American Express and continues to breach the Agreement by providing services at American Express on behalf of his current employer.

41.     Pahade acknowledged in the Agreement that disclosure and use of Cognizant's Confidential Information and undertaking competing employment in violation of Section 2.2 would cause Cognizant irreparable damage. Pahade also agreed that Cognizant would be entitled

to an injunction to restrain him from such breaches, as well as compensatory damages. Further, Pahade agreed and acknowledged that Cognizant would be entitled to recovery of its reasonable attorneys' fees and costs if successful in enforcing the Agreement (*See* Ex. A, ¶ 7.4).

42.    Cognizant performed fully its obligations under the Agreement.

43.    Pahade's intentional breaches of the Agreement injured, and continue to injure, Cognizant's business, thereby causing Cognizant to suffer irreparable harm, and further causing Cognizant to suffer monetary damages in excess of the jurisdictional requirements of this Court.

44.    Cognizant is entitled to injunctive relief.

**WHEREFORE**, Cognizant respectfully requests that:

(1)    Pahade be enjoined from working at American Express for a period of twelve months following his resignation from Cognizant and extended by the period of his breach;

(2)    Cognizant be reimbursed by Pahade for any and all compensatory damages, attorneys' fees, costs, and expenses incurred as a result of the wrongful conduct described herein, including such costs and fees incurred in this litigation; and

(3)    This Court grant such other and further relief as it may deem just and equitable.

## COUNT II
### (Breach of the Covenant of Good Faith and Fair Dealing)

45.    Cognizant realleges and incorporates paragraphs 1 through 44, as though fully set forth herein.

46.    Pahade's actions described above violate the implied covenant of good faith and fair dealing inherent in the Agreement.

47.    Pahade's actions were taken with malice, bad faith and/or reckless indifference to Cognizant's rights under the Agreement.

48.    By his actions, Pahade intended to deprive Cognizant of its rights under the Agreement.

49.     Pahade breached the implied covenant of good faith and fair dealing by engaging in this improper conduct, breaching the Agreement that was designed to protect Cognizant's legitimate business interests, and ignoring and resisting Cognizant's repeated good faith attempts to resolve the dispute without recourse to litigation.

50.     As a result of these actions, Cognizant has suffered damages. Balasundaram has benefited financially as a result of his improper actions.

**WHEREFORE**, Cognizant respectfully requests that:

(1)     Pahade be enjoined from working at American Express for twelve months following the date he resigned his employment with Cognizant and extended by the period of his breach;

(2)     Cognizant be reimbursed by Pahade for any and all compensatory damages, attorneys' fees, costs, and expenses incurred as a result of the wrongful conduct described herein, including such costs and fees incurred in this litigation; and

(3)     This Court grant such other and further relief as it may deem just and equitable.

Dated: May 4, 2014

**MORGAN, LEWIS & BOCKIUS LLP**

By:     /s/Richard G. Rosenblatt
        Richard G. Rosenblatt
        James P. Walsh, Jr.
        August W. Heckman III
        502 Carnegie Center
        Princeton, NJ 08540
        609-919-6609/6647/6696